UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JOAB SCOTT, individually and on behalf of all others similarly situated | § § § | |
| Plaintiff, | § § | CIVIL ACTION NO. _____ |
| V. | § § | JUDGE:_____ |
| HONDA DEVELOPMENT & MANUFACTURING OF AMERICA, LLC, | § § § § | PLAINTIFF'S CLASS AND COLLECTIVE ACTION COMPLAINT |
| Defendant. | § § § | (JURY TRIAL DEMANDED) |

## INTRODUCTION

1. This is a collective action instituted by Plaintiff Joab Scott as a result of Defendant Honda Development & Manufacturing of America, LLC's practices and policies of not paying its non-exempt employees, including Plaintiff and other similarly situated employees nationwide, wages for all hours worked, including overtime compensation at the rate of one and one-half times their regular rate of pay for all the hours they worked in excess of 40 each workweek in violation of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq*.

2. Plaintiff also brings a class action pursuant to Fed. R. Civ. P. 23 to remedy violations of the Ohio Minimum Fair Wage Standards Act (OMFWSA), Ohio R.C. § 4111, *et seq.*, the Ohio Prompt Pay Act (OPPA), O.R.C. § 4113.15, and the common law of Ohio.

## JURISDICTION AND VENUE

3. This court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 as this case is brought under the laws of the United States, specifically the FLSA, 29 U.S.C. § 216(b).

4. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367 because they are so related to the FLSA claims as to form part of the same case or controversy.

5. The Court has personal jurisdiction over Defendant, as Defendant's principal place of business is in Ohio.

6. Venue is proper pursuant to 28 U.S.C. § 1391(b) because Defendant's principal place of business is located in this District, Defendant conducts business throughout this District, and a substantial part of the events and omissions giving rise to the claims occurred in this District.

**PARTIES**

7. At all material times, Plaintiff is and was a citizen of the United States and a resident of Jefferson County, Ohio, and Plaintiff worked for Defendant in Ohio. Plaintiff's written consent to this action is attached hereto as Exhibit "A."

8. At all material times, Plaintiff was an employee within the meaning of 29 U.S.C. § 203(e) and Ohio R.C. § 4111.03(D)(3).

9. At all material times, Plaintiff was an employee engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. §§ 206-207.

10. Defendant is a limited liability company with its principal place of business in Ohio. Defendant may be served with process by serving registered agent Corporation Service Company, 1160 Dublin Road, Suite 400, Columbus, Ohio 43215.

11. At all material times, Defendant was and is an employer within the meaning of 29 U.S.C. § 203(d) and Ohio R.C. § 4111.03(D)(2).

12. At all material times, Defendant was and is an enterprise in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. § 203(r).

13. At all material times, Defendant is and was an enterprise in commerce or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203(s)(1), and has enjoyed yearly gross revenue in excess of $500,000.

## FACTUAL ALLEGATIONS

14. Defendant is a global manufacturer of vehicles and operates throughout the United States. Defendant operates 10 manufacturing facilities in the United States. Honda, Manufacturing Sites, https://manufacturing.honda.com/#manufacturing-sites (last visited April 28, 2025). These manufacturing facilities are located in Alabama, Georgia, Indiana, North Carolina, Ohio and South Carolina. *Id.*

15. At these manufacturing sites, Defendant builds and manufactures various components for vehicles. Defendant employs hundreds of production associates to perform the various manual labor tasks necessary for the manufacture of vehicles.

16. Production associates are hourly, non-exempt employees of Defendant.

17. Plaintiff works as a production associate for Defendant in Ohio.

18. Plaintiff works for Defendant at the Marysville production facility.

19. Plaintiff works the 6 am to 2:30 pm shift for Defendant.

20. Plaintiff has worked for Defendant since approximately August 2006.

21. Defendant agreed to pay Plaintiff for all hours he worked for Defendant at a set hourly rate.

22. Plaintiff is paid an hourly rate of approximately $35.00 per hour.

23. Plaintiff has worked more than 40 hours in a week while working for Defendant.

24. Unfortunately, Defendant maintained a policy and practice of failing to pay its employees, including production associates like Plaintiff, for all hours worked.

25. Production associates, including Plaintiff, are required to arrive at Defendant's manufacturing facilities approximately 30 minutes prior to their scheduled shift start time.

26. When they arrive at Defendant's manufacturing sites, production associates are required to report to a locker room. In the locker room, production associates, including Plaintiff, are required to don personal protective equipment that is needed to perform work for Defendant.

27. The personal protective equipment includes a bump cap, Kevlar sleeves, Kevlar gloves, ear plugs, steel toed boots, and other safety equipment. This equipment is required by Defendant, and production associates are not able to perform their work for Defendant without this equipment.

28. The time it takes to put on the required equipment is approximately 10 to 15 minutes.

29. After putting on the required equipment, production associates are required to walk to their workstation.

30. The workstations are located approximately a half-mile away from the locker rooms where production associates don their personal protective equipment.

31. The time it takes to walk to the workstation is approximately 10 to 15 minutes.

32. Production associates, including Plaintiff, were required to report to their workstation before the start of their scheduled shift.

33. When they arrive at their workstation, they are to organize their parts, ensure their equipment works, and complete any outstanding assignments from the prior shift before their work shift begins. This time could take 5-10 minutes.

34. If production associates, including Plaintiff, report to their workstation after the start of their scheduled shift, they would be punished.

35. Plaintiff's normal shift start time is 6 am. That means Plaintiff is required to arrive at Defendant's manufacturing facility at approximately 5:30 am to be able to report to begin his scheduled shift 6 am.

36. Production associates are not paid until the start of their scheduled shift.

37. Thus, all time spent working prior to the start of their scheduled shift is unpaid.

38. After a production associate's shift ends, the production associates are required to clock out and then walk back to the locker room to take off the required protective equipment.

39. The time spent at the end of the shift walking to the locker room and taking off the protective equipment is approximately 20 to30 minutes.

40. Defendant did not pay for the time spent walking to the locking room at the end of the shift or the time spent doffing the protective equipment.

41. As a result of Defendant's policies, Plaintiff and other similarly situated employees were not compensated for all time that they spent working for Defendant.

42. The time spent donning and doffing the personal protective equipment was required by Defendant

43. The time spent donning and doffing the personal protective equipment was controlled by Defendant

44. The time spent donning and doffing the personal protective equipment was completed that the at the specific direction of Defendant.

45. The time spent donning and doffing the personal protective equipment was completed on Defendant's premises.

46. The time spent donning and doffing the personal protective equipment was primarily for the benefit of Defendant.

47. Additionally, Plaintiff and all other similarly situated employees were subject to the control of Defendant, were required to follow all of Defendant's instructions regarding the personal protective equipment, and were required to comply with Defendant's instructions to wear the personal protective equipment under the threat of discipline, including possible termination.

48. The donning and doffing of the personal protective equipment was necessary to the principal work performed by the Plaintiff and all similarly situated workers – which was to perform manual labor manufacturing tasks related to Defendant's vehicles.

49. Indeed, Defendant required the Plaintiff and all similarly situated workers to don and doff the personal protective equipment for the purposes of overall safety and to ensure that Plaintiff and all similarly situated workers could perform their job duties for Defendant on a daily basis

50. Indeed, the personal protective equipment was tied to the productive work that production associates were hired to perform and without the personal protective equipment, Plaintiff and all similarly situated workers could not perform their work duties for Defendant.

51. Defendant could not have eliminated the personal protective equipment without impairing the Plaintiff's ability and all similarly situated workers' abilities to perform their daily job duties for Defendant.

52. Therefore, the time spent donning and doffing the personal protective equipment was primarily for the benefit of Defendant.

53. The time spent donning and doffing the personal protective equipment was integral and indispensable to the principal activity performed by Plaintiff and all similarly situated employees.

54. Moreover, Plaintiff and all similarly situated employees were required to don and doff the personal protective equipment during the regular workday and during prescribed hours, and at the specific direction of Defendant or pursuant to an express provision of a written or unwritten contract. Therefore, this time constitutes compensable time worked under Ohio law. *See* O. R.C. § 4111.031(B)(2), (C)(1).

55. As a result, Plaintiff and all similarly situated employees were not paid for all hours worked and were not paid overtime compensation for all hours they worked in excess of 40 each workweek.

56. Defendant knowingly violated the Fair Labor Standards Act and Ohio law by engaging in the above-mentioned violations.

## CONTIUOUS WORKDAY RULE

57. Pursuant to the continuous workday rule, once the first compensable activity is performed, the continuous workday has started and all subsequent activities performed are compensable regardless of the amount of time each specific individual activity takes. *See* 29 C.F.R. § 790.6(a). The continuous workday rule requires compensation from the start of the first compensable activity to the last compensable activity. *See id*. Specifically, section 790.6(a) states as follows:

> Periods of time between the commencement of the employee's first principal activity and the completion of his last principal activity on any workday must be included in the computation of hours worked to the same extent as would be required if the Portal Act had not been enacted.

*Id*.

58. Thus, pursuant to the continuous workday rule, the Plaintiff and all similarly situated employees are entitled to compensation from the time they first performed their principal

activity – donning of their personal protective equipment, to the time they last performed their principal activity – doffing of their personal protective equipment.

59. All time in between those events is compensable.

60. That means that all time spent walking from the locker room to the workstation and from the workstation to the locker room is compensable.

61. The pre-shift activities identified in this Complaint were not incidental activities for the Plaintiff and all similarly situated workers but instead, this time was integral and indispensable to their principal activity and is compensable.

62. The post shift activities identified in this Complaint were not incidental activities for the Plaintiff and all similarly situated workers but instead, this time was integral and indispensable to their principal activity and is compensable.

63. Due to the substantial pre-shift and post-shift work, the Plaintiff and all similarly situated workers were not paid for all time worked each day and are owed significant unpaid wages.

64. Defendant's method of paying the Plaintiff and all similarly situated workers was willful and was not based on a good faith and reasonable belief that their conduct complied with the law. Defendant knew the requirement to pay for all time worked, but intentionally and/or recklessly chose not to do so.

## **WILLFULNESS**

65. Indeed, Defendant knowingly and willfully engaged in the above-mentioned violations of the FLSA and Ohio law.

66. Defendant has a common practice and policy of requiring Plaintiff and other similarly situated employees to perform the unpaid worked referenced above and not compensating them for time spent performing such work.

67. Defendant knew that Plaintiff and other similarly situated employees were performing the unpaid work because Defendant required them to perform it.

68. Defendant knew that, and otherwise showed reckless disregard as to whether its conduct in failing to properly pay Plaintiff and other similarly situated employees for the unpaid work referenced above violated the FLSA.

69. Defendant knew or should have known that its policies and practices violate the law, and Defendant did not make, and has not made a good faith effort to comply with the FLSA. Rather, Defendant knowingly, willfully, and/or with reckless disregard of the law, has carried out its unlawful pattern, practice, and policy of not paying Plaintiff and all other similarly situated workers for all hours worked. Defendant's method of paying Plaintiff and other similarly situated employees was not based on a good faith and reasonable belief that its conduct complied with the law.

70. Defendant failed to make, keep, and preserve accurate records of all of the unpaid work performed by Plaintiff and other similarly situated workers employed by Defendant.

## FLSA COLLECTIVE ACTION ALLEGATIONS

71. Pursuant to 29 U.S.C. §216(b), Plaintiff brings Count One of this action on his own behalf, and on behalf of all other persons similarly situated who have been, are being, or will be adversely affected by Defendant's unlawful conduct.

72. The class which Plaintiff seeks to represent and for whom Plaintiff seeks the right to send "opt-in" notices for purposes of the collective action, and of which Plaintiff himself is a member, is composed of and defined as follows:

> All current and former production associates, and all other similarly situated workers, who were paid on an hourly basis and were employed by Defendant at any time between three (3) years prior to the filing of this suit to the present (the "FLSA Collective Class").

73. At this time, Plaintiff are unable to state the exact size of the FLSA Collective Class, but upon information and belief, aver that it consists of more than 500 individuals.

74. This action is maintainable as an "opt-in" collective action pursuant to 29 U.S.C. § 216(b) as to claims for unpaid wages earned, including overtime compensation, liquidated damages, attorneys' fees, and costs under the FLSA.

75. In addition to Plaintiff, numerous current and former employees are similarly situated with regard to their claims for unpaid wages and damages. Plaintiff is representative of those other employees and is acting on behalf of their interests as well as his own in bringing this action.

76. These similarly situated employees are known to Defendant and are readily identifiable through Defendant's payroll records. These individuals may readily be notified of this action, and allowed to opt in pursuant to 29 U.S.C. § 216(b), for the purpose of collectively adjudicating their claims for unpaid overtime compensation, liquidated damages, attorneys' fees, and costs under the FLSA.

## OHIO CLASS ACTION ALLEGATIONS

77. Plaintiff brings Counts Two through Six of this action pursuant to Fed. R. Civ. P. 23(a) and (b)(3) on behalf of himself and all other members of the following Classes defined as:

<u>OMFWSA Class</u>: All current and former production associates, and all other similarly situated workers, who were paid on an hourly basis and were employed by Defendant in Ohio at any time between three (3) years prior to the filing of this suit to the present.

<u>Breach of Contract</u>: All current and former production associates, and all other similarly situated workers, who were paid on an hourly basis and who worked less than 40 hours for at least one week in Ohio in the six-year period before the filing of this Complaint to the present.

<u>Quantum Meruit</u>: All current and former production associates, and all other similarly situated workers, who were paid on an hourly basis and who worked less than 40 hours for at least one week in Ohio in the four-year period before the filing of this Complaint to the present.

<u>Unjust Enrichment</u>: All current and former production associates, and all other similarly situated workers, who were paid on an hourly basis and who worked less than 40 hours for at least one week in Ohio in the six-year period before the filing of this Complaint to the present.

<u>OPPA</u>: All current and former production associates, and all other similarly situated workers, who were paid on an hourly basis and who worked less than 40 hours for at least one week in Ohio in the six-year period before the filing of this Complaint to the present.

78. The Ohio Classes are so numerous that joinder of all class members is impracticable. Upon information and belief, the Ohio Classes consist of more than 100 individuals.

79. There are questions of law or fact common to the Ohio Classes, including but not limited to the following:

   a. whether Defendant failed to pay the class members overtime compensation for hours worked in excess of 40 each workweek;

   b. whether Defendant failed to pay for all hours worked in weeks when the class members worked less than 40 hours;

      c. whether the time spent donning and doffing protective equipment is compensable under Ohio law; and

      d. what amount of monetary relief will compensate Plaintiff and other members of the class for Defendant's violation of O.R.C. sections 4111.03 and 4111.10.

80. The claims of Plaintiff are typical of the claims of the Ohio class members. Plaintiff's claims arise out of the same uniform course of conduct by Defendant and are based on the same legal theories as the claims of the other Ohio class members.

81. Scott will fairly and adequately protect the interests of the Ohio class members. His interests are not antagonistic to, but rather are in unison with, the interests of the other Ohio class members. Plaintiff's Counsel has broad experience in handling class action wage-and-hour litigation and is fully qualified to prosecute the claims of the Ohio class members in this case.

82. The questions of law or fact that are common to the Ohio class members predominate over any questions affecting only individual members. The primary questions that will determine Defendant's liability to the Ohio class members, listed above, are common to the classes as a whole, and predominate over any questions affecting only individual class members.

83. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Requiring Ohio class members to pursue their claims individually would entail a host of separate suits, with concomitant duplication of costs, attorneys' fees, and demands on court resources. Many Ohio class members' claims are sufficiently small that they would be reluctant to incur the substantial cost, expense, and risk of pursuing their claims individually. Certification of this case pursuant to Fed. R. Civ. P. 23 will enable the issues to be adjudicated for all class members with the efficiencies of class litigation.

## COUNT ONE

### (Fair Labor Standards Act Violations)

84. Plaintiff incorporates the allegations in paragraphs 1 through 83.

85. Defendant's practice and policy of not paying Plaintiff and other similarly situated employees for all hours worked violates the FLSA, 29 U.S.C. § 207, 29 C.F.R.§ 785.24.

86. Defendant's practice and policy of not paying Plaintiff and other similarly situated employees for all hours worked each day violates the FLSA, 29 U.S.C. § 207, 29 C.F.R. § 785.24.

87. Defendant's practices and policies of not paying Plaintiff and others similarly situated for all time worked, including overtime compensation at the rate of one and one-half times their regular rate of pay for all of the hours they worked over 40 each workweek violates the FLSA, 29 U.S.C. §§ 201-219 and 29 CFR § 785.24.

88. Defendant's actions and/or omissions were not in good faith.

89. By engaging in the above-described practices and policies, Defendant willfully, knowingly, and/or recklessly violated the provisions of the FLSA.

90. As a result of Defendant's practices and policies, Plaintiff and other similarly situated employees have been damaged in that they have not received wages due to them pursuant to the FLSA.

## COUNT TWO

### (Violations of Ohio Minimum Fair Wage Standards Act)

91. Plaintiff incorporates the allegations in paragraphs 1 through 83.

92. Defendant's practice and policy of not paying Plaintiff and other similarly situated employees for all hours worked violates the OMFWSA, R.C. § 4111.03 *et seq*.

93. Defendant's practices and policies of not paying Plaintiff and other similarly situated employees for all time worked, including overtime compensation at the rate of one and one-half times their regular rate of pay for all of the hours they worked over 40 each workweek, violates the OMFWSA, R.C. § 4111.03 *et seq*.

94. Defendant's actions and/or omissions were not in good faith.

95. By engaging in the above-described practices and policies, Defendant willfully, knowingly and/or recklessly violated the OMFWSA, R.C. § 4111.03 *et seq*.

96. As a result of Defendant's practices and policies, Plaintiff and other similarly situated employees have been damaged in that they have not received wages due to them pursuant to the OMFWSA.

## COUNT THREE

**(Breach of Contract)**

97. Plaintiff incorporates the allegations in paragraphs 1 through 83.

98. A valid and enforceable agreement existed between Plaintiff and Defendant, and the Breach of Contract Class Members and Defendant, the terms and conditions of which include, but are not limited to, an agreement by Plaintiff and the Breach of Contract Class Members to perform services for Defendant, and for Defendant to pay Plaintiff and the Breach of Contract Class Members for all hours worked at an agreed hourly rate.

99. More specifically, under Ohio law, the elements of an enforceable contract are an offer, acceptance, consideration, and mutual meeting of the minds.

100. Here, a contract was formed at the time Plaintiff was hired by Defendant. The contract was an oral offer made at the time of hire. The contract was then documented into an offer letter. The terms of the contract were straightforward. Plaintiff agreed to perform work for

Defendant in exchange for Defendant's payment of an hourly rate for all hours worked by Plaintiff. That is, Defendant made an offer to each Plaintiff to pay each Plaintiff an hourly rate for all work performed for Defendant. Plaintiff accepted that offer and began performing this service for Defendant. Defendant violated the agreement by failing to pay for all work performed, including the time spent walking to the screening station, waiting in line for the screenings, and completing the screenings.

101. Further, the consideration provided by Defendant to Plaintiff was a set amount of money for each hour worked. Moreover, Defendant and Plaintiff had a meeting of the minds of an agreed hourly rate for all hours worked. Again, Defendant violated this agreement.

102. Defendant failed to Plaintiff for time spent in the screenings, and therefore, breached their agreement with Plaintiff. The screenings should have been paid by Defendant because they were completed by Plaintiff during the regular workday or during prescribed hours and were completed at the specific direction of Defendant or pursuant to an express provision of a written or unwritten contract.

103. Finally, Plaintiff suffered damages as a result of Defendant's breach of the agreement. Plaintiff was not paid for all time worked in those weeks when she worked less than 40 hours. Consequently, she was denied monetary compensation due under the law.

104. The same facts exist for the Breach of Contract Class Members.

105. Plaintiff and the Breach of Contract Class Members duly performed under the agreement at Defendant's direction and for its benefit, as noted herein.

106. Defendant failed and refused to fulfill its obligations under the agreement by not paying for all time worked by Plaintiff and the Breach of Contract Class Members, including the time spent in the screenings.

107. Plaintiff and the Breach of Contract Class Members are entitled to recover damages from these breaches for the last six years.

## COUNT FOUR

### (Quantum Meruit)

108. Plaintiff incorporates the allegations in paragraphs 1 through 83.

109. This claim is pled in the alternative to Count Three. Plaintiff and the Quantum Meruit Class Members performed and provided valuable work (described in this Complaint) to Defendant during their employment with Defendant.

110. The screenings constitute compensable work that was primarily for the benefit of Defendant, performed at the direction of Defendant, performed during the workday, and performed during prescribed hours.

111. Defendant had knowledge of, accepted, appreciated, and retained the benefit of Plaintiff's and the Quantum Meruit Class Member's work.

112. No contract exists between Plaintiff and Defendant, and the Quantum Meruit Class Members and Defendant.

113. Defendant had reasonable notice and/or knowledge that Plaintiff and the Quantum Meruit Class Members expected to be compensated for the time spent walking to the screening station, waiting in line for the screenings, and completing the screenings.

114. Defendant failed to pay Plaintiff and the Quantum Meruit Class Members the reasonable value of their work.

115. Under the circumstances described in this Complaint, it would be inequitable for Defendant to retain the benefit without payment of value to the Plaintiff and Quantum Meruit Class Members.

116. Plaintiff and the Quantum Meruit Class Members are entitled to recover damages under this claim for the last four years.

## COUNT FIVE

### (Unjust Enrichment)

117. Plaintiff incorporates the allegations in paragraphs 1 through 83.

118. This claim is pled in the alternative to Count Two. Plaintiff and the Unjust Enrichment Class Members performed and provided valuable work (described in this Complaint) to Defendant during their employment with Defendant.

119. The services provided by Plaintiff and the Unjust Enrichment Class Members provided a benefit to Defendant. Namely, the screenings completed by Plaintiff and the Unjust Enrichment Class Members provided a benefit to Defendant by ensuring that Defendant products were not stolen or taken from Defendant's premises.

120. Defendant was aware of the benefit provided by Plaintiff and the Unjust Enrichment Class Members. Indeed, Defendant required the screenings, had knowledge of the screenings, and was aware of the benefit provided by the screenings.

121. The screenings constitute compensable work that was primarily for the benefit of Defendant, performed at the direction of Defendant, performed during the workday, and performed during prescribed hours.

122. Defendant had knowledge of, accepted, appreciated, and retained the benefit of Plaintiff's and the Unjust Enrichment Class Member's work.

123. Under these circumstances, it would be unfair and inequitable for Defendant to retain the benefit of the services and work performed by Plaintiff and the Unjust Enrichment Class Members without compensating them.

124.   Plaintiff and the Unjust Enrichment Class Members are entitled to recover damages under this claim for the last six years.

## COUNT SIX

### (Oho Prompt Pay Act)

125.   Plaintiff incorporates the allegations in paragraphs 1 through 83.

126.   Plaintiff brings this claim for violation of the OPPA on behalf of herself and the OPPA Class Members for which certification is sought pursuant to Fed. R. Civ. P. 23.

127.   At all times relevant to this Complaint, Defendant employed Plaintiff and the OPPA Class Members within the meaning of the OPPA and was subject to its compliance.

128.   R.C. 4113.15(A) requires that Defendant pay Plaintiff and the Class all wages on or before the first day of each month, for wages earned during the first half of the preceding month ending with the fifteenth day thereof, and on or before the fifteenth day of each month, for wages earned during the last half of the preceding calendar month.

129.   There is no dispute that Defendant has an obligation to pay employees for all hours worked. However, Defendant did not pay Plaintiff and the OPPS Class Members for the time spent walking to the screening station, waiting in line for the screenings, and completing the screenings.

130.   Plaintiff and the OPPA Class Members' unpaid wages have remained unpaid for more than 30 days beyond their regularly scheduled payday in violation of R.C. 4113.15(A).

131.   As a result of Defendant's willful violation, Plaintiff and the Ohio Class are entitled to unpaid wages and liquidated damages pursuant to R.C. 4113.15(A).

**PRAYER FOR RELIEF**

132. WHEREFORE, Plaintiff, and all those similarly situated, collectively pray that this Honorable Court:

   a. Issue an order permitting this litigation to proceed as a collective action;

   b. Order prompt notice, pursuant to 29 U.S.C. § 216(b), to all class members that this litigation is pending and that they have the right to "opt in" to this litigation;

   c. Issue an order certifying the Ohio Classes pursuant to Fed. R. Civ. R. 23(a) and (b)(3);

   d. Award Plaintiff and the classes he represents actual damages for unpaid wages;

   e. Award Plaintiff and the classes he represents statutory liquidated damages in an amount to the unpaid wages found due to Plaintiff and the classes he represents under the FLSA and the OMFWSA;

   f. Award Plaintiff and the OPPA Class Members liquidated damages in an amount equal to 6% of the amount of the unpaid wages still unpaid or two hundred dollars per OPPA Class Member, whichever is greater;

   g. Award Plaintiff and the classes he represents pre- and post-judgment interest at the statutory rate;

   h. Award Plaintiff and the classes he represents attorneys' fees, costs, and disbursements; and

   i. Award Plaintiff and the classes he represents further and additional relief as this Court deems just and proper.

**JURY DEMAND**

133. Pursuant to their rights under the Constitution of the United States, U.S. CONST. amend VII, and FED R. CIV. P. 38(a), Plaintiff hereby demands trial by jury as to all claims and issues so triable.

                                      Respectfully submitted,

                                      /s/ *Matthew S. Grimsley*
                                      Matthew S. Grimsley
                                      Ohio Bar No. 009294
                                      Anthony J. Lazzaro
                                      Ohio Bar No. 0077962
                                      Lori M. Griffin
                                      Ohio Bar No. 0085241
                                      The Lazzaro Law Firm, LLC
                                      The Heritage Building, Suite 250
                                      34555 Chagrin Boulevard
                                      Moreland Hills, Ohio 44022
                                      Phone: 216-696-5000
                                      Facsimile: 216-696-7005
                                      matthew@lazzarolawfirm.com
                                      anthony@lazzarolawfirm.com
                                      lori@lazzarolawfirm.com

                                      And

                                      Don J. Foty
                                      (will apply for admission *pro hac vice*)
                                      Texas Bar No. 24050022
                                      Foty Law Group
                                      2 Greenway Plaza, Suite 250
                                      Houston, TX 77046
                                      Telephone: 713-523-0001
                                      Facsimile: 713-523-1116
                                      dfoty@fotylawgroup.com

                                      Attorneys for Plaintiff